FIRST NAT. BANK OF MT. VERNON, WASH., v. NATIONAL PARK BANK OF NEW YORK.

(Circuit Court of Appeals, Second Circuit. December 11, 1911.)

No. 12.

BANKS AND BANKING (§ 189*)—DRAFTS—IMPROPER ISSUANCE—NOTICE—PAYMENT IN DUE COURSE.

Plaintiff bank, doing business at Mt. Vernon, Wash., mantained a deposit with defendant as its New York correspondent, and, having elected L. as its president, notified defendant of his signature, and that he had authority to sign drafts against balances held for the credit of plaintiff bank. Thereafter L., for an unauthorized purpose, drew a draft against plaintiff's account with defendant, which was regular in every way, except that it was dated at "Billings, O. T., June 6, 1902," instead of at Mt. Vernon, and this draft, being received in due course and being for less than the amount of plaintiff's deposit, defendant paid. *Held,* that the fact that the draft was on a blank intended for the customers of the payee, a Billings bank, and was dated at Billings, was

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

not so indicative of fraud as to put defendant on inquiry; and hence plaintiff could not recover the amount of the draft from defendant.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 729–732; Dec. Dig. § 189.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Action by the First National Bank of Mt. Vernon, Wash., against the National Park Bank of New York. From a judgment (175 Fed. 881) dismissing the complaint, plaintiff brings error. Affirmed.

Thomas B. Hardin, for plaintiff in error.
Louis F. Doyle, for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The plaintiff is a corporation engaged in carrying on the business of banking at Mt. Vernon in the state of Washington. The defendant is engaged in similar business in New York City and for several years prior to the transaction in question had acted as the Eastern correspondent of the plaintiff, receiving its deposits and honoring its drafts.

On June 9, 1902, the defendant received and paid in the due course of business the following draft, the plaintiff having on deposit a sum in excess of $6,000:

"First National Bank

"No. ——                                       Billings, O. T., June 6, 1902.

At sight pay to the order of First National Bank, Billings, Okla., $6000, six thousand & no/100 dollars with exchange value received and charge to account of First National Bank Mt. Vernon, Wash.

"Charles H. Lyon, Prest.
"To National Park Bank, New York, N. Y."

At the time this draft was drawn Lyon was actually president of the Mt. Vernon bank and this fact had been communicated to the defendant by the following letter:

"Mt. Vernon, Wash., March 21, 1902.

"National Park Bank, New York City—Gentlemen: You will find below the signature of Mr. Chas. H. Lyon who has been appointed president of this bank, Mr. Chas. Clary having resigned that position. Mr. Lyon has authority to sign drafts against balances held for the credit of this bank by its correspondents.

"Very truly,                                  R. G. Hannaford, Cashier."
"[Signature] Chas. H. Lyon, Prest."

The by-laws of the Mt. Vernon bank contained the following provisions:

"All contracts, checks, drafts, etc., for this bank, and all receipts for circulating notes received from Comptroller of the Currency, shall be signed by the president or cashier."

The plaintiff denies liability for the draft on the ground that it was unauthorized and irregular and not connected with the business of the bank, and demands judgment for $6,000 and interest. We have then a draft drawn by a Western bank upon its New York corres-

pondent which has funds ·to the credit of the drawer in excess of the amount of·the draft, which is signed by the president of the bank, who is invested with ample authority so to sign.

The question presented for decision is whether when such a draft, though fraudulent in its inception, is presented for payment through the ordinary· banking channels, the drawee, if wholly ignorant of the fraud, is liable if he pays the draft. We are clearly of the opinion that he is not liable. To render him liable he must know of the fraud or the circumstance must be such as to put him upon inquiry.

The fact that the draft was upon a blank intended for the use of the customers of the Billings bank and the fact that it was apparently drawn at Billings are perfectly compatible with honesty and a finding that they were indicative of fraud or were so suspicious as to put the defendant upon inquiry would be wholly without support. It is easy to imagine many situations where such a draft would be necessary and proper For instance, the president, with ample authority from his directors, may have gone to Billings to settle a controversy or to purchase property for the bank with the full expectation of all concerned that if he succeeded he was to make the payment on the spot. The defendant was justified in assuming that the draft was honestly drawn. There was no proof that it was actually drawn at Billings, but assuming that it was drawn there, there is, as we have seen, nothing in that circumstance to excite suspicion. The initial fault was that of the plaintiff in electing an unworthy man as its president. The loss which followed can be traced directly to that action. The attempt of the plaintiff to saddle the loss occasioned by its own negligence or misconduct upon the defendant is without justification. Had the defendant stopped the payment of the draft its act would have been unprecedented. Banking business cannot be transacted if surrounded by such limitations as are suggested in the plaintiff's brief. We think that when the National Park Bank received the draft signed by the president of its correspondent, it took the only rational course and paid it.

At the close of the testimony both parties moved for the direction of a verdict. Though the plaintiff reserved the right to go to the jury if its motion were denied, it did not thereafter renew its request and there is no exception which presents the question in this court.

The judgment is affirmed with costs.